HAMPTON STAVE COMPANY *v.* ELLIOTT.

Opinion delivered June 26, 1916.

TIMBER—RIGHT OF REMOVAL—SALE OF LAND—REASONABLE TIME.—Appellant deeded certain land to one M., reserving the oak timber thereon with the right to remove the same, but without fixing the time for the removal thereof. *Held,* the appellant was entitled to no more than a reasonable time in which to remove the said timber.

Appeal from Cleveland Chancery Court; *John M. Elliott,* Chancellor; modified and affirmed.

STATEMENT BY THE COURT.

This controversy arose over the right to cut timber from certain lands in Cleveland County. Appellant brought suit, claiming to be the owner of the white and cow oak on the lands, suitable for stave bolts, and prayed an injunction against the defendant to prevent his further cutting timber therefrom.

The defendant answered, denying the ownership of plaintiff of the timber, and alleged that he was the owner thereof, having purchased the land; prayed judgment against the plaintiff for the value of timber cut by it and an injunction to prevent its further cutting timber from the lands.

The appellant was the owner of the lands from which the timber was taken, having purchased same on May 17, 1905, in order to supply its plant with stave bolts, and its policy in the operation of its plant was to buy all the timber that could be purchased and only to cut its timber from its own land when it was necessary to do so in order to continue operations. On August 13, 1907, the stave company sold and conveyed the lands from which the timber was taken to one McCartney, reciting in its deed of conveyance a reservation of the timber as follows: "In conveying this land, the Hampton Stave Company reserves the white oak and cow oak stave bolt timber on all the above lands, with necessary right-of-way privileges to remove same." He immediately conveyed the lands to the Grant Lumber Company, which by a warranty deed on March 31, 1914, conveyed them to appellee. The appellant cut stave bolt timber from the lands in controversy in 1910 and again in 1912, some of the witnesses stating that it cut all the timber therefrom suitable for stave bolts in that year. They also said that they worked it close and a great deal of the timber cut in 1912 was too small to be used for stave bolts in 1907. One witness stated that Mr. Hampton, the manager of appellant company, told him in 1912 that when the timber was cut he wanted it all worked over so that they could quit the land

and turn it back to the purchasers. This witness stated that he finished the cutting in the latter part of that year, and wrote to the stave company that he had cut it just as close as it could be cut. Some of the timber cut in 1912 was good timber that had been left in the sloughs and creeks at the former cuttings, because of the difficulty in getting to it.

The appellant company went on the lands again in the fall of 1914, after they had been purchased by appellee and cut, according to its admission, ninety-one cords of stave bolts, which the testimony showed were of the value of $3 per cord. There was some testimony on appellee's part tending to show that a great deal of the timber cut was suitable for manufacture into lumber and some for manufacture into veneers, the value of which would have been from $20 to $36 per thousand feet. This witness made an estimate of the timber cut and the kinds of trees from the stumps and the tree tops upon the land.

The chancellor found that appellant had no right to the timber on account of not having taken it from the lands within a reasonable time, and rendered a decree for the highest value the testimony showed the timber could have been worth, from which this appeal is prosecuted.

*Crawford & Hooker* and *T. D. Wynne,* for appellant.

1. The title to the timber was reserved in the plaintiff—the title to the lumber never passed to the grantee, as it was excepted and reserved in the grant. There was no forfeiture of plaintiff's right, and plaintiff had a reasonable time, at least, to remove the timber as expressly reserved in the deed. 116 Pac. 645; 120 N. W. 827; 121 S. W. 629; 27 N. W. 697; 6 A. & E. Ann. Cas. 249; 179 S. W. 410; 77 Ark. 115.

2. If the "reasonable time" principle as announced by this court in 99 Ark. 112, 78 *Id.* 143, 93 *Id.* 11, and 178 S. W. 304, applies in this case, it does not control here. All the cases hold that the facts and circumstances surrounding the parties and the contract shall be taken into consideration in fixing the time. The chancellor did not

do this. 77 Ark. 115; 99 *Id.* 112; 78 *Id.* 413; 93 *Id.* 11; 178 S. W. 304; 121 *Id.* 629; 142 *Id.* 394; 116 Pac. 645; 120 N. W. 827; 179 S. W. 410.

3. The subsequent acts of the parties showing acquiescence and the construction put upon the agreement are entitled to great weight in determining the intention of the parties. No protest was made by the Grant Lumber Company or Elliott, or McCartney, until shortly before this suit. The language used in the deed was an absolute reservation of the timber, plain and unambiguous.

*M. Danaher* and *Palmer Danaher,* for appellee.

1. Where no time limit is mentioned in a deed "reserving" or "excepting" the timber, the well established rule is that only a reasonable time is allowed. 28 Am. Rep. 776; 58 W. Va. 645; 35 Mich. 89; 43 S. W. 733; 77 Ark. 115; 164 Pa. St. 234; 91 S. W. 53; 28 Am. Rep. 779. In the light of these authorities the reasonable time had expired.

2. The chancellor's finding as to the value of the timber is fully sustained by the evidence.

KIRBY, J., (after stating the facts). Appellant contends that the clause in its deed to McCartney reserving the oak timber upon the lands conveyed, with the right to remove same, was in effect an exception thereof from the grant entitling it to remove said timber at any time thereafter. There was no time fixed for the removal of the timber nor any testimony showing the intention of the parties in that regard, except the stave company's president's statement of its policy of preserving its timber on its own lands as long as possible and supplying it for the operation of its plant only when other timber could not be purchased therefor, and that he declined to fix a limit for its removal in the making of the deed of conveyance upon the suggestion of the grantee that it should be done. The court is of opinion that under said clause of reservation in the deed, the stave bolt company was entitled to no more than a reasonable time for the removal of the standing timber and had no more right to remove

same than would have resulted had it conveyed the lands without such reservation and the grantee conveyed the timber back to it without mention of any time for its removal.

In *Liston* v. *Chapman & Dewey Lumber Co.*, it was held under a deed conveying the merchantable standing timber of a certain description which specified no time for its removal, that the right to remove existed only for a reasonable time in the absence of anything in the conveyance or in the proof *aliunde* showing a contrary intention. *Earl* v. *Harris*, 99 Ark. 112; *Hall* v. *Wellman Lumber Co.*, 78 Ark. 408; *Fletcher* v. *Lyon*, 93 Ark. 10; *Burbridge* v. *Ark. Lumber Co.*, 118 Ark. 94, 178 S. W. 304; *Newton* v. *Warren Vehicle Stock Co.*, 116 Ark. 393.

We see no reason why such a reservation of timber from a grant of the land fixing and indicating no time for its removal, should be construed to give the grantor a longer time for the removal thereof, than it would have had had it purchased the standing timber conveyed to it by a deed in which no time was fixed for the removal and hold under the circumstances of this case, that appellant had no more than a reasonable time for the removal of the timber, under the terms of its deed conveying the lands, within the doctrine already announced by former decisions of this court. See also *Heflin* v. *Bingham*, 28 Am. Rep. 776; *Adkins* v. *Huff*, 58 W. Va. 645; *Morris* v. *Sanders*, 43 S. W. 733.

The lands were twice cut over by appellant company after their grant to McCartney, the last time before the cutting complained about herein, in the year 1912, when it was thought by those who cut the timber that all was taken that could be profitably used for the purpose for which the timber was required. There was no reason shown why the timber could not have been sooner cut and removed, and unquestionably it could have been during the more than seven years from the reservation of the title thereto in the deed to McCartney in August, 1907, to the last cutting in September, 1914, the land having been cut over twice during such time as already stated.

No error was committed in the chancellor's holding that appellant's right to remove the timber had ceased at the time of the cutting thereof and that it should respond in damages for its value.

We are of the opinion, however, that the chancellor's finding as to the amount of damages is not supported by the testimony, being clearly against the preponderance of it and that the judgment should not have been for a greater amount than $3 per cord for the ninety-one cords of stave bolts taken by appellant company, since it acted under the belief that it had the right to remove the timber by reason of the reservation in its said conveyance of the lands. *Bunch* v. *Pittman,* 123 Ark. 127, 184 S. W. (Ark.) 850.

The decree is accordingly modified, and as modified will be affirmed. It is so ordered.