(111 So. 427)

## MURPHY et al. v. SCHUSTER SPRINGS LUMBER CO. (3 Div. 778.)

(Supreme Court of Alabama. Dec. 18, 1926. Rehearing Denied Jan. 13, 1927.)

**1. Tender ⬤═22—Allegation of tender "about" time certain period expired is insufficient to show tender before expiration of such period.**

Allegation of purchaser of standing timber that he tendered additional consideration for extension of time for cutting "about" time first period expired is not sufficient to show tender before expiration of such period, since "about" may as well mean short time after, as short time before, date specified.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, About.]

**2. Contracts ⬤═211—Time is of essence of option contract.**

In option contracts, unless expressly negatived, time is always of essence of contract.

**3. Logs and logging ⬤═3(11)—Provision for extension of contract for sale of timber by payment of 50 cents per acre per year required tender before expiration of initial period.**

Contract for sale of standing timber, providing for extension of five-year period "by the payment * * * of 50 cents per acre per year" for time of extension, held to require tender of performance by purchaser before expiration of five-year period.

**4. Tender ⬤═15(3) — Refusal of purchaser's tender for extension of time for cutting timber for failure to make reasonable effort within initial period waived objection that it was not made in time.**

Where tender by purchaser of standing timber of performance of agreement for extension of time for cutting was refused because it had not made reasonable efforts to cut within first period, as contract required, all other objections to tender were waived, including objection that it was not made in time.

**5. Logs and logging ⬤═3(11)—Where three-year extension of time for cutting timber required payment of 50 cents per acre per year, tender of $1.50 was not required at beginning.**

Where contract for sale of standing timber provided for three-year extension of time for cutting on payment of 50 cents per acre per year, purchaser is not required to tender $1.50 per acre for extension; tender of 50 cents per acre at beginning of each year being sufficient.

**6. Contracts ⬤═221(2)—Courts construe provisions of contract as covenants rather than conditions precedent in doubtful case.**

In cases of substantial doubt, courts construe provisions in contracts as covenants rather than as conditions precedent.

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Logs and logging ⬤⟹3(11)—Clause allowing extension of time for cutting timber, "provided" grantee agrees to make reasonable efforts to cut within original period, held "covenant"; "condition."**

Clause in contract for sale of standing timber, allowing extension of time for cutting, "provided that grantee agrees to make reasonable efforts to cut and remove said timber within said five-year period," held "covenant," which is promise of only one party, rather than "condition" which binds both parties (citing Words and Phrases, "Provided").

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condition; Covenant.]

**8. Contracts ⬤⟹173—Intention of parties determines whether covenant in contract is dependent or independent.**

Whether covenants in contract are dependent or independent depends on intention and meaning of parties appearing in instrument, to which intention, when once discovered, all technical forms of expression must yield.

**9. Logs and logging ⬤⟹3(11)—Covenant in contract for sale of timber, allowing extension, provided grantee agreed to make reasonable effort to cut within original period, held "dependent."**

Covenant, in contract for sale of standing timber, that extension of time for cutting may be had, "provided that grantee agrees to make reasonable efforts to cut and remove said timber within said five-year period," held dependent, or, in effect, condition precedent to right to compel extension.

**10. Logs and logging ⬤⟹3(14)—Purchaser of timber held not to have made reasonable efforts to cut it within five-year period so as to entitle it to extension.**

Purchaser of standing timber held not to have made reasonable efforts to cut timber within five years so as to entitle it to extension, where no timber was cut during such period, notwithstanding obligations and necessities as to cutting other timber, inconvenience and expense of cutting timber under contract, and fact that mill burned.

**11. Logs and logging ⬤⟹3(11)—Provision in contract for sale of timber, requiring reasonable efforts to cut within five years, held applicable to subpurchaser as well as purchaser.**

Provision in contract for sale of standing timber that purchaser should make reasonable efforts to cut it within five-year period to be entitled to extension held applicable to subpurchaser as well as purchaser, and it is immaterial whether subpurchaser acquired rights by assignment of original deed and contract or by grant of purchaser's rights thereunder.

**12. Logs and logging ⬤⟹3(11)—Subpurchaser of standing timber held chargeable for purchaser's neglect to cut timber, where extension depended on reasonable efforts to cut within initial period.**

. Where contract for sale of standing timber required reasonable efforts to cut it within five-year period to entitle purchaser to extension of time for cutting, subpurchaser held chargeable for purchaser's neglect during first half of period to cut and remove any timber.

Somerville, Gardner, Thomas, and Miller, JJ., dissenting in part.

Appeal from Circuit Court, Butler County; A. E. Gamble, Judge.

Bill in equity by the Schuster Springs Lumber Company against Ada F. Murphy and others. From a decree overruling demurrer to the bill, respondents appeal. Reversed, rendered, and remanded.

Powell & Hamilton, of Greenville, for appellants.

The provision as to reasonable effort to remove timber within the five-year period is not a covenant, but a condition precedent to the right to an extension of the agreement beyond five years. Harris v. Free, 6 Ala. App. 113, 60 So. 423; H. H. Hitt Lbr. Co. v. Cullman C. & C. Co., 200 Ala. 415, 76 So. 347; Gray v. Blanchard, 8 Pick. (Mass.) 284; Carter v. Doe ex dem. Chaudron, 21 Ala. 72; Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 67 L. R. A. 571, 110 Am. St. Rep. 973; Brennan v. Brennan, 185 Mass. 560, 71 N. E. 80, 102 Am. St. Rep. 363; 1 Words and Phrases, Second Series 865. No reasonable excuse for failure to cut and remove during the five-year period is shown. Polzin v. Beene, 126 Ark. 46, 189 S. W. 654; Louis Werner S. M. Co. v. Sessoms, 120 Ark. 105, 179 S. W. 185; Newton v. Warren Vehicle Stock Co., 116 Ark. 393, 173 S. W. 819. The bill should show a tender and offer on the part of complainant to perform. Roquemore v. Mitchell, 167 Ala. 481, 52 So. 423, 140 Am. St. Rep. 52; 25 R. C. L. 331. The complainant may not violate its duty under the contract and yet have the contract enforced. Mier v. Hadden, 118 Am. St. Rep. 597; Potts v. Whitehead, 23 N. J. Eq. 512; Henry v. Black, 213 Pa. 620, 63 A. 250; 25 R. C. L. 237. Time is of the essence of an option and, unless complied with, the option holder cannot demand enforcement. "About the time" may mean after the period fixed. Pollock v. Brookover, 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 409.

Steiner, Crum & Weil, of Montgomery, for appellee.

Looking to the whole instrument and the circumstances surrounding its execution, the provision obligating the grantee to make reasonable effort to cut and remove the timber within five years from the date of execution must be considered only a promise to make such reasonable effort, and failure to do so did not have the effect of forfeiting the right to have the contract extended. Zimmerman Mfg. Co. v. Daffin, 149 Ala. 388, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; .

Lowery v. May, 213 Ala. 66, 104 So. 5; Elyton Land Co. v. S. & N. A., 100 Ala. 396, 14 So. 207; Dunlap v. Mobley, 71 Ala. 102; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 A. 4, 1 L. R. A. 380; 3 Thompson on Real Prop. 112; 2 Thompson, 1201; 1 Pomeroy's Eq. (4th Ed.) 870; Stanley v. Colt, 72 U. S. (5 Wall.) 119, 18 L. Ed. 502; Georgia R. & B. Co. v. Smith, 128 U. S. 174, 9 S. Ct. 47, 32 L. Ed. 377; Hale v. Finch, 104 U. S. 261, 26 L. Ed. 732. Said provision is limited to the grantee, and does not bind its assigns. Patterson v. A. C. L., 202 Ala. 583, 81 So. 85. Complainant acquired the right of its predecessor to demand an extension of the time. City Garage v. Ballenger, 214 Ala. 516, 108 So. 257; Hanby v. Dominick, 206 Ala. 539, 90 So. 287. Respondent's refusal on a specific ground was a waiver of other grounds. City Council v. Montgomery Water Works, 77 Ala. 256; Watts v. Metropolitan L. I. Co., 211 Ala. 406, 100 So. 812; Stewart v. Cross, 66 Ala. 22; Saunders v. McDonough, 191 Ala. 134, 67 So. 591. It is not necessary to allege a tender which would not have been accepted if made. Jenkins v. Harrison, 66 Ala. 345; Irvin v. Irvin, 207 Ala. 493, 93 So. 517; Taylor v. Newton, 152 Ala. 465, 44 So. 583. A reasonable time after expiration of the five-year period was sufficient within which to pay for additional time. Stark & Oldham v. Burford, ante, p. 68, 109 So. 148.

SOMERVILLE, J. The litigation herein arises between the vendor and the purchaser of standing timber, and turns upon the proper construction of the italicized portions of this paragraph of the written contract of sale:

"Said timber to be cut and removed from said lands within five years from the date of this conveyance, *with the option and privilege of extending this contract for not exceeding three years from the expiration hereof on lands upon which timber has not been cut,* by the payment to the undersigned grantors, by the W. T. Smith Lumber Company, the sum of fifty cents per acre per year for the time said extension is desired: *Provided that grantee agrees to make reasonable efforts to cut and remove said timber within said five-year* period; and provided further that, in the event of such extension, no timber measuring less than ten inches in diameter at the stump at the time of cutting shall be cut and removed. At the expiration of this contract, or an extension of same, all rights and privileges herein granted shall cease, and grantee shall have no further right to use or go upon said lands for any purpose except to remove apparatus and machinery; and all timber remaining uncut at the expiration of this lease or extension of same shall revert to and become the absolute property of the grantor(s) herein named, their heirs or assigns."

The complaining purchaser seeks to enforce by decree in equity the stipulated right to extend the period for the cutting and removal of the timber. The theory of the bill of complaint is that the contract of sale exhibits an unconditional grant to the purchaser of an option to extend the period for three years from the termination of the first, or five-year, period, by paying to the vendor the additional sum of 50 cents per acre for so many acres as then remained uncut; and that the "provided" clause is not to be construed as a condition, either precedent or subsequent, but as a covenant merely, which is compensable in damages for any injury resulting from the purchaser's failure "to make reasonable efforts to cut and remove said timber within the five-year period." The bill presents also, by pertinent allegations, the alternative theory of a right to the extension, even though the "provided" clause be held to be a condition precedent, by reason of matters and circumstances which, it is conceived, fairly excused the purchaser's failure to cut and remove the timber within the five-year period; showing, in fact, that the requirement of such a performance under such conditions would have involved more than "reasonable efforts," and hence was not contemplated by the contract. And, it is alleged, "the W. T. Smith Lumber Company could not have cut and removed said timber from said lands within said five-year limitation by reasonable effort"; and "complainant made reasonable effort to cut and remove said timber from said lands within said five-year limitation, but was wholly unable to do so."

The bill of complaint, as amended, shows that the W. T. Smith Lumber Company was the original purchaser of this timber, distributed over 1,300 or 1,400 acres, under the contract dated May 17, 1920; that on November 15, 1922, that company sold and conveyed to this complainant all of this timber, with the same rights, privileges, and burdens as were granted and imposed by the original deed of sale to the first purchaser; and that neither the Smith Lumber Company, nor its subvendee, this complainant, has ever cut any timber whatever under this contract; the entire acreage granted remaining uncut and undisturbed at the termination of the five-year period on May 17, 1925.

The theory of respondents is that the "provided" clause of the contract is a *condition precedent* to the purchaser's exercise of the right to extend the contract; and that the bill is wanting in equity, because, the attempted explanations and excuses notwithstanding, the failure to cut and remove *any timber* within the five-year period exhibits a failure to make the "reasonable efforts" required.

A minor insistence, also, is that the exercise of the option to extend demanded of the purchaser, not only a timely notice of its intention to claim the right, but also a tender to the vendors of 50 cents per acre on the uncut lands *before the expiration of the five-year period;* and that the purchaser's performance of those obligations is not suffi-

ciently shown by the allegation of the bill that "complainant, *about the time, or just before*, said five years had expired, gave notice to respondents that it would insist on an extension of said lease or contract, * * * tendered to respondents an extension agreement, and offered to pay to respondents for all uncut timber on said lands at the rate of 50 cents per acre."

[1] If the proper construction of the contract is that the right to its extension depended upon the vendors' notification by the purchaser of the latter's intention to extend, and his tender of the additional consideration in money, before or at the expiration of the five-year period, then it is clear that the allegations of the bill would not be sufficient to show a compliance with those requirements, because the word "about" in this connection may as well mean a short time *after*, as a short time *before*, the date specified. Alabama G. S. R. Co. v. Arnold, 84 Ala. 159, 4 So. 359, 5 Am. St. Rep. 354; Platt v. Jones, 59 Me. 232, 241; Colter v. Greenhagen, 3 Minn. 126, 130 (Gil. 74); 1 Words and Phrases, 26.

[2, 3] There are authorities which support that construction of this contract. "The provision in question, conferring as it does a privilege, and unilateral in its obligation, partakes to some extent of the nature of an option, in which time is ordinarily of the essence, and the accepted doctrine in reference to this and other instruments containing the same and similar language is that they should be strictly construed. Product Co. v. Dunn, 142 N. C. 471 [55 S. E. 299]; Alston v. Connell, 140 N. C. 485;[1] Estes v. Furlong, 59 Ill. 298; Dyer v. Duffy, 39 W. Va. 148 [19 S. E. 540, 24 L. R. A. 339]; Mason v. Payne, 47 Mo. 517; 21 A. & E. [Ency. Law] (2d Ed.) 931." Bateman v. Lumber Co., 154 N. C. 248, 251, 70 S. E. 474, 475 (34 L. R. A. [N. S.] 615).

The reason for this rule of strict construction has been thus stated:

"It would be inequitable to hold one party bound beyond the time fixed for performance, and permit the other party, at his election, to postpone performance to suit his convenience or interest, with no obligation to perform at any time. This would be especially true in contracts relating to standing timber, the value of which is, as this record discloses, fluctuating—and, to a large extent, speculative. The timber is subject to destruction by forest fire, in which event the owner of the land would have no remedy for loss sustained by its destruction. Again, to permit the optionee to await his convenience to comply with the terms upon which his option depends burdens the owner with obligation to hold the land in its uncleared, nonproducing condition, he paying the tax thereon." Granville Lumber Co. v. Atkinson (D. C.) 234 F. 424, 432.

This is in accord with the generally recognized principle that in option contracts, un-less expressly negatived, time is always of the essence of the contract. 25 R. C. L. 237, § 39.

In the recent case of Stark et al. v. Burford (Ala. Sup.) 109 So. 148,[2] a majority of the court held, as to a contract substantially resembling this, that the tender for extension might be effectively made within a reasonable time after the termination of the first period. The writer concurred with Justices Gardner, Miller, and Bouldin, on the assumption stated in the opinion of Justice Miller, that the grantor's covenant to extend the time for cutting and removing the timber did not create an independent option in favor of the grantee, but was of the substance of the original grant. Chief Justice Anderson and Justices Sayre and Thomas dissented. The writer's more thorough examination of the contract in the Burford Case, supra, now convinces him that the covenant to extend was nothing more than an independent option, as here, unilateral in character, and properly governed by the stricter rules of performance applicable to option contracts.

A majority of the court, composed of Chief Justice ANDERSON, and Justices SAYRE, SOMERVILLE, GARDNER, THOMAS and BOULDIN, now hold that a tender of performance by the purchaser was not effective, unless made within the five-year period, and that the allegation of the bill of complaint in this behalf was not in itself sufficient. All of the majority, except Justices GARDNER and BOULDIN, hold that the case of Stark v. Burford (Ala. Sup.) 109 So. 148,[2] must be overruled on that point. Justices GARDNER and BOULDIN think it can be distinguished from the instant case, and that it should not be overruled. Justice MILLER adheres to the case of Stark v. Burford, and dissents from the majority view.

[4] The bill of complaint alleges that, when the alleged tender for extension was made by the purchaser, the vendors refused it on the ground that reasonable effort had not been made to cut and remove the timber within the five-year limitation, and forbade complainants to trespass upon said land; and it is urged that the refusal of the tender on that ground was a waiver of the objection that it was not made before the expiration of the five-year period.

If a timely tender is made, and it is rejected on one ground specified at the time, it would amount to a waiver of other grounds of objection relating to the character and the mode of the tender—this for the reason that, if other objection were made, the tenderer would have the opportunity to remedy the objection specified. Seawell v. Henry, 6 Ala. 226; Montgomery v. De Picot, 153 Cal. 509, 96 P. 305, 126 Am. St. Rep. 84, 89. But the principle of waiver goes further than this;

---

[1] 53 S. E. 292.

[2] *Ante*, p. 68.

and, with respect to the timeliness of the tender, if no objection is made on that ground, but only on some other, the default as to time is held to be waived. Buck v. Burk, 18 N. Y. 337; Hanna v. Ratekin, 43 Ill. 462; Adams v. Helm, 55 Mo. 468; Gould v. Banks, 8 Wend. (N. Y.) 562, 24 Am. Dec. 90; 38 Cyc. 150 (c). See, also, Moynahan v. Moore, 9 Mich. 9, 77 Am. Dec. 468, and note, 486, 487; 25 R. C. L. 628, § 7.

This doctrine is sometimes grounded on the theory that the specification of some other ground of objection furnishes sufficient evidence that the tender would have been rejected, even if made strictly in time; a situation rendering any offer unnecessary because useless. As said in Thompson v. Crains, 294 Ill. 270, 278, 128 N. E. 508, 511, 12 A. L. R. 931, 935:

"The law interprets the conduct of the parties as to a tender according to their apparent intention and determines its sufficiency upon the objections then stated, and silence is considered a tacit waiver of other objections."

Strong analogy may be found in the applications of this principle of waiver to denials of liability on insurance policies. Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812; Georgia Home Ins. v. Allen, 128 Ala. 451, 30 So. 537.

We hold that the bill shows a waiver of the delay in making the tender, and hence the ground of demurrer going to the effect of that delay was properly overruled.

[5] There is no merit in the contention of appellants that the tender should have been for $1.50 per acre—50 cents for each of three years of extension. The contract stipulates for 50 cents per acre per year for the time of extension, but a tender, of 50 cents per acre at the beginning of each year was sufficient. However, on the principle stated above, that ground of objection was also waived.

[6, 7] We consider now the major question presented by respondents' demurrer—the nature and effect of the clause, "provided that grantee agrees to make reasonable efforts to cut and remove said timber within said five-year period."

"No precise or technical words are required in a deed to create a condition precedent or subsequent. It is said, that the words, proviso, ita quod, and sub conditione [provided that, so that, and on condition that] are the most proper to make a condition, yet, they have not always that effect, but frequently serve for other purposes, somtimes operating as a qualification or limitation, and sometimes as a covenant; * * * but, whether they amount to the one or the other may be matter of construction, dependent on the contract, the nature of the circumstances and the intention of the party creating the estate. The intention of the party [or parties] to the instrument, when clearly ascertained is of controlling efficacy. But, when that is

not clearly manifest, the construction to be given to the deed, as has been well said, will, after all, depend less upon artificial rules, than upon the application of good sense and sound equity, to the object and spirit of the contract in the given case." Elyton Land Co. v. South & North Ala. R. Co., 100 Ala. 396, 405, 14 So. 207, 208; Seaboard Air Line R. Co. v. Anniston, etc., Co., 186 Ala. 264, 276, 65 So. 187; 18 Corp. Jur. 353, § 367. See, also, 6 Words and Phrases, 5750, citing numerous cases to the same effect.

It has been said that a condition differs from a covenant, in that it binds both parties, while a covenant is the promise of only one. Langley v. Ross, 55 Mich. 163, 20 N. W. 886; Hale v. Finch, 104 U. S. 261, 264, 265, 26 L. Ed. 732.

In the instant case, we think there would be no difficulty in construing the "provided" clause as stating a condition precedent to the grantee's right to an extension had it said: "Provided that the grantee has made reasonable efforts to cut and remove," etc. The intention then would have been plain. But the proviso is, not that within the five-year period the grantee shall have made reasonable efforts to cut and remove, but that it now—that is, at the beginning of the five-year period—agrees to do so. Thus written, its natural meaning seems to be, "But it is understood that the grantee contracts to make reasonable efforts to complete the cutting and removal of the timber within the first or five-year period." This seems to be the meaning of the proviso of the clause immediately following the clause in question, restricting the size of the timber to be cut in case of extension. The differing effect of the two forms of expression contrasted above is noted in the case of Bailey v. White, 3 Ala. 330, 334, where the court said:

"The covenant of the plaintiff does not profess to be made in consideration of an engagement by the defendant to perform his part of the contract, but in consideration of its actual performance, and according to the principles laid down, does not impose an absolute legal duty."

In cases of substantial doubt courts construe provisions in contracts as covenants rather than as conditions precedent. In the instant case the prima facie import of the word "provided" is overcome by the nature and form of the provision itself, since the word "agree" prima facie imports a covenant only. 2 Thomp. on Real Property, 265, § 1201. The clause is not a technical condition precedent, but is in form a covenant.

[8, 9] The question then for determination is whether the covenant thus imposed upon the purchaser is a dependent or an independent covenant—that is, whether its performance must have preceded the attainment of the purchaser's right to buy the three-year extension of time, or whether its nonperformance was intended to give the vendors

merely an action on the covenant for damages in case of breach. "While the order of time in which covenants are to be performed is an important consideration in determining whether they are dependent or independent (Bilansky v. Hogan, 190 Mich. 463, 157 N. W. 13), it is difficult to lay down any general principle by which to determine what covenants are dependent and what independent, the cases being agreed that this question must be determined by the intention and meaning of the parties as it appears in the instrument, and by the application of common sense to each particular case (Nesbitt v. McGehee, 26 Ala. 748), to which intention, when once discovered, all technical forms of expression must yield." 15 Corp. Jur. 1221, § 20.

In Nesbitt v. McGehee, supra, this court said:

"The parties have an undoubted right, if they please, to make their covenants dependent or independent *throughout*, or to make the covenants independent as to one thing, and dependent as to another. They have a right to mould their contracts so as to suit their mutual convenience and interests; and when the courts can ascertain their meaning, they are so to construe the contract as to give effect to that meaning, provided the purpose be lawful. They must be held to have intended the performance of their respective acts, *in the order of time indicated by their covenants*." (Italics supplied.)

In Rives v. Baptiste, 25 Ala. 382, 391, this court quoted with approval Lord Mansfield's statement in Bonne v. Eyre, 1 H. Bla. 273, note (a):

" 'The distinction is very clear: Where mutual covenants go to the whole consideration on both sides, there they are mutual conditions, the one precedent to the other; but where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on the covenant, and shall not plead it as a condition precedent.' "

It is obvious that a dependent covenant will usually, in legal effect, amount to a condition precedent or concurrent.

A majority of the court, the CHIEF JUSTICE, and Justices SAYRE, MILLER, and BOULDIN, hold that under the foregoing principles, and upon a fair consideration of the whole contract and the terms in which it is expressed, the covenant to extend, and the covenant to make reasonable efforts to cut and remove the timber within five years are dependent covenants, the performance of the latter by the purchaser being in effect a condition precedent to the purchaser's right to require the vendors' performance of the former.

The writer, with whom concur Justices GARDNER and THOMAS, dissents from that conclusion, being of the opinion that the provision should be construed as an independent covenant, and not as a condition precedent; and that its breach would not

work a forfeiture of the right to an extension.

[10] Under the majority decision it becomes necessary to consider the sufficiency of the facts recited in the amended bill to show that complainant, or its predecessor in right, the W. T. Smith Lumber Company, made "reasonable efforts" to cut and remove the timber within the five-year period, as they covenanted to do.

In Heflin v. Bingham, 56 Ala. 566, 575 (28 Am. Rep. 776), where the deeds to the purchaser of standing timber was construed as giving him a "reasonable time" for its removal, it was said (per Stone, J.) :

"What is a reasonable time is necessarily dependent on the nature of the service, and is generally a question of fact. It is so in the present case. Still, there are certain rules not to be lost sight of. The use for which the timber is known to be wanted; the custom and rule, if such there be, of felling and removing the timber, as the capacity of the mill may require it, if kept reasonably employed, are among the inquiries which should be made in determining the question of reasonable time. The accident of a failing market, or undue delay in rebuilding the mill after its destruction; these, and similar disturbances, should exert no influence with the jury. But, when the mill was destroyed by fire, a reasonable time was allowed for its reconstruction."

In the case of Young v. Cowan, 134 Ark. 539, 542, 204 S. W. 304, 306, in discussing the same question of reasonable time for removal, it was held that "all the facts and circumstances of the case and the conditions surrounding the parties at the time of the execution of the contract should be considered," and the court said:

"In the Garden City Stave & Heading Co. v. Sims, supra (84 Ark. 603 [106 S. W. 959]), it was said that the purchaser of the timber was entitled to have taken into consideration the slashy character of the land, wet seasons and the difficulty of securing workmen as having prevented a prompt removal of the timber. So it will be seen that what was a reasonable time in the instant case is dependent upon the local conditions and the peculiar circumstances of the case. A period of nine years elapsed before the Cowans commenced to cut and remove the timber from the land. There was no reason shown why the timber could not have been sooner cut and removed. The fact that there was a decline in the timber market or that no sawmill was near to the timber constituted no excuse for failure to remove the timber within a reasonable time. Newton v. Warren Vehicle Stock Co., 116 Ark. 393 [173 S. W. 819], and Polzin v. Beene, 126 Ark. 46 [189 S. W. 654]. In the last-mentioned case it was said that inconvenience, or the cost of compliance with the contract, or other like thing cannot excuse a party from the performance of an absolute and unqualified undertaking to do that which is possible and lawful."

The two cases above cited present an inquiry somewhat different from that of the

present case, but the questions are closely related.

[11] The court is of the opinion that the provision here in question contemplated "reasonable efforts" to cut and remove the timber either by the purchaser, the W. T. Smith Lumber Company, or, if its rights were sold to another, by a subpurchaser who possessed ability, facilities, and opportunity equal to those of the Smith Company. Otherwise the extension might be obtained by the mere device of selling out to an individual or company possessing no ability or facilities for cutting and removing the timber, and whose reasonable efforts in that behalf would amount to nothing.

The court is of the opinion, also, that neither the obligations and necessities of the purchaser with respect to the cutting of other timber tracts purchased and owned by it, under penalty of forfeiture for delay, nor the mere matters of convenience or expense to be incurred in working this timber, resulting from the purchaser's choice of the prior working of other timber, which matters seem to be the substance of the excuses offered for the delay, were sufficient to justify its neglect to proceed with and accomplish its undertaking in the premises—matters not shown to have been known to the vendors, or which, even if known, were probably considered as fully provided for by the long period of five years allowed for the cutting and removal.

The accident of the burning of complainant's sawmill after it was prepared for service on these lands would, of course, be a matter for consideration. But the allegations of the bill show that this happened nearly two years before the five-year period expired, and that the reconstructed mill was used by complainant's choice for the working of other timber for more than a year before the end of that period. This circumstance therefore adds but little to the weight of complainant's excuses.

[12] It is obvious that complainant is chargeable with the neglect of the Smith Company, if any, during the period of its ownership, approximately the first half of the five-year period; and no explanation is made of that company's failure to cut and remove during that time. It is obvious also that, when a purchaser of timber, thus obligated as to the time for its removal, postpones any action at all until his time has nearly expired, the excuses of accident and inconvenience then occurring lose the greater part of their force, and in such a case it must be held that the purchaser assumes the risk of any but very extraordinary interference with his performance. And, it may be added, the total failure of the successive purchasers of this timber to even make a beginning on its cutting during the long period of five years could only be excused by very extraordinary happenings and conditions which the bill does not disclose.

Upon a full consideration of this phase of the case, all of the Justices are agreed in the conclusion that performance of the covenant in question was not excused by the facts and circumstances shown. Under the majority view as to the nature of this covenant, it results that the demurrer should have been sustained. The decree of the circuit court will therefore be reversed, and a decree will be here rendered sustaining the demurrer and remanding the cause for further proceedings.

In determining the rights of this complainant, we do not think it matters whether it acquired its rights by an assignment of the original deed and contract or by a grant merely of the original purchaser's rights thereunder. The resulting rights and obligations are substantially the same in either case as between the original vendors and the subpurchaser.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE, BOULDIN, and MILLER, JJ., concur.

SOMERVILLE, GARDNER, and THOMAS, JJ., dissent.

